The United States Court of Appeals for the Ninth Circuit is now in session. Thank you, Madam Clerk. Good morning. My name is Morgan Christen. I'm one of the judges on the Ninth Circuit Court of Appeals. Welcome to the Ninth Circuit and to our virtual courtroom. I'm up here in Anchorage, Alaska, participating this way, and I'm delighted to be joined by my colleague, Judge John Owens, whose chambers are in San Diego. And we both want to welcome and thank Judge Joe Battalion, who's, on top of all of his other duties, agreed to volunteer to sit with us a few days this week. We appreciate that help very, very much. I just want to do a quick sound check. Counsel, can you both hear me? I should have Mr. Jaffe? Yes, I can hear you, Your Honor. Okay, great. And both my colleagues can hear Mr. Jaffe as well. Is that right? Okay. Okay, that sounds real good. And we should have, I think, Mr. Bronco as well. Can you hear us? Yes, Your Honor. I can. Perfect. Okay. We're ready to roll then. If I could just start with a little bit of housekeeping that I need to get out of the way before we hear our first argument. I'd like to make clear on the record that we had agreed to submit three cases today without argument. 18-10449, United States v. Washington, will be heard, decided without argument. 19-16202, Ottawa v. PLC Diagnostics will also be submitted. And 19-16332, Allen v. City of Oakland. All those cases will be, have been submitted on the briefs. We'll move on to our first argument, which is 17-17082. Siglar v. Hopkins. And counsel, whenever you are ready, we are ready to hear your argument. Thank you, Your Honor. Good morning, Your Honors, and may it please the court. My name is Jordan Jaffe, and I represent the appellant, Mr. Louis Siglar. I'd like to reserve two minutes for rebuttal, if I may. Go right ahead. You certainly may, but just keep an eye on the clock and keep track of your own time, please. Thank you, Your Honor. I will. This is a 1983 case alleging excessive force. And the central issue on appeal is whether the district court abused its discretion in denying Mr. Siglar's request for appointment of counsel. And there are two parts to this inquiry that I'd like to address today. The first is looking at the district court's order itself and whether that order contained an abuse of discretion and was an error of law. The second issue is applying the exceptional circumstances test under Wilborn v. Escalderon, whether Mr. Siglar should have been appointed counsel if this court were to apply that test in the first instance. So taking the first issue, looking at the court's order, under Section 1915E1, a court may appoint counsel where there's indigent counsel in civil cases. But under this court's law in Wilborn v. Escalderon, it can only do so in exceptional circumstances. And the test identified in that case looks at two factors, one, the likelihood of success, and two, the ability of the litigant to articulate his or her claims pro se in light of the complexity of the legal issues involved. The court's order in this instance looked at neither one of those factors, analyzing neither the likelihood of success nor the ability of the petitioner to articulate his claims, and therefore, because that is an erroneous application of law that is by definition an abuse of discretion, and it should therefore be reversed. Counsel, I'm going to push back on that just a little bit. I think it's very clear he didn't articulate the test in the way that you've just called our attention to. But, of course, opposing counsel argues, and if you could cut straight to that, Chase, on this first part, he argues that essentially the district court did consider at least the second factor because he said this is something about you can participate in this two-day trial or something like that. I'm paraphrasing his comments. You know the quote. And I argue to the effect that that is a substitute for the notion that, or a paraphrased statement of the judge's assessment that this pro se litigant could participate because the question, right, is the ability to represent in light of the complexity of the issues, and that was a way to say they're not that complex. So that's a rambling question. But what's your response to that, please? Yeah, there are two responses to that. Number one is looking at the court's order itself. The quote that defendant Mr. Hopkins pointed to is in the context of dealing, rejecting Mr. Siegler's request for a continuance. It says he can participate in the trial. So if you look at the way that the order is laid out, and, again, this is the excerpt of record at. I have looked at that. I agree with you. I'm going to spot you that. Yeah. I'm not sure it matters, though. Can you go to that, please? Yeah. So, and the reason that it matters, so, again, it wasn't in the context of denying his request of counsel. But the reason that it matters is because there was a section of the order that did address his request for continuance. And that portion identified different reasons for rejecting the appointment of counsel. And, in fact, it said too late. He said it, the district court judge said it not once but twice. The district court did not say, well, I think he's competent to handle this, he can handle the 2D trial. He identified different reasons why the court was rejecting it. And those different reasons are neither of the two factors under the Wilbar case. So I think it precludes the analysis the defendant is arguing here because it's not that we have a situation where it's ambiguous what the court was relying on, but instead we have a situation where the court identified things that are not applicable under the legal test under either of the two factors. Could I get you to turn, thank you, could I get you to turn to what it is that you think prevents us from applying the test ourselves? So I think the court can apply the test itself. And in this instance should apply the test to find that Mr. Siegler should be appointed counsel. I think there are multiple paths in court to take. But I think the best path today would be to apply the test and to find a reverse remand with an order for the district court to request pro bono counsel. Oh, wow. Not just to apply the test, but to reverse the court and say he has to appoint pro bono counsel. Why and how many cases have you tried where somebody acted up in a courtroom and an officer subdued him that you won? I'm not talking about you, any place that you can find ever. So I think that goes to the likelihood of success of his claims. Yeah, none. I'm sorry? None. Tell me why he's going to succeed in this case. Well, I think on the likelihood of success factor, the first question is, that is actually undisputed that he's sufficiently showed a likelihood of success here. It's undisputed that he will? That he's showed a sufficient likelihood of success for purposes of the 1915 E1. Whether he actually wins or not, I'm sorry. That's a low hurdle, but why does he make the hurdle? So two reasons. The first is, this is a case where he survived the screening for indigent complaints. Number two, this was a case where the defendant did not even move for summary judgment. If it was that weak of a case, they could have at least moved for summary judgment. It made it all the way to a jury trial, despite Mr. Siegler's difficulties in articulating his claims and his health problems. You know, could I ask a related question? I didn't mean to interrupt you, but I think I have, forgive me. The one thing that I wondered about, and I went through the entire record looking for this, there was this witness, attorney Matthew Leathers, and his deposition, video deposition was presented. And just going back to Judge Battalion's question, is it the case that that deposition testimony, that that witness was helpful to Mr. Siegler? Or what are we missing? Because I kind of am in Judge Battalion's camp, but this seemed to me like a really heavy lift for this pro se litigant, so. Yeah, so let me address the factual question first in terms of Matthew Leathers. He was disclosed as a witness, and he was disclosed by both parties. And so they played his deposition, which was about 18 minutes long at the hearing. So there was no difficulty in getting that deposition played. No, I appreciate that, but we don't know what he said. Yeah. Was he supportive of Mr. Siegler's version of events? He was, it was ambiguous. He wasn't directly supportive of it. I don't think it clearly moved the line one way or the other. Okay. But the other point that I would raise in terms of the likelihood of success, and this is that the likelihood of success for purposes of appointing counsel is not the question of whether the litigant is going to win or not. As laid out in our opening brief, the question is whether the claims raise serious merit, whether it would be futile to appoint counsel here. And I think given that Mr. Siegler's complaint survived a motion to dismiss, and there was no motion for summary judgment and made it all the way to trial, that under that standard, which I would submit is a low bar, that he's sufficiently shown a likelihood of success. And again, this is an issue that's not just the other side didn't dispute in their answering brief that there was a sufficient likelihood of success here. And you don't, your position is that unless the judge says the magic words, then we have to send it back regardless. I don't think there are magic words that need to be stated. I do think it has to be apparent that the judge applied the relevant test. And here, instead of reciting the relevant test, and I think if you actually look at defendants response brief to Mr. Siegler's request, defendants at the trial court, they recited the relevant test. But then the district court's order did not address the relevant test either in reciting the legal standard or in the analysis itself. And it applied the quote, too late standard in finding that Mr. Siegler was not able to appoint counsel. I see I'm limited on my time. So unless your honors have any further questions, I'll hold off for rebuttal. No problem, we took you, we asked a lot of questions, especially I did. So we'll put two minutes on the clock. When you come back, you'll have your two minute rebuttal time. Thank you, your honor. No problem. We'll hear from opposing counsel next, please. Good morning, and may it please the court. This is Joe Branco from the Maricopa County Attorney's Office on behalf of Defendant Appellee Officer Hopkins. Surely, it would have been better if the district court had explicitly addressed the exceptional circumstances test, but this does not amount to reversible error. Sigler's argument simply exalts form over function. First, Sigler's request merely stated he needed to get over illness. And that's something that the district court did address in its order. Second, this case is not complex. It involved the presentation of competing stories about what happened when Hopkins used force against Sigler in a courtroom. And third, Sigler adequately represented himself and articulated his claims sufficiently for the jury to consider them on their merits. It isn't like Sigler was an empty suit at the trial. Further concerning the request for a continuance, the district court correctly found that Sigler's attached medical records didn't show Sigler would be incapable of conducting or appearing at a two day trial. On appeal, Sigler's arguments rest on distortions. First, Sigler distorts the exceptional circumstances inquiry. The thrust of Sigler's appellate argument in the briefing is backwards looking. He's seeking a reset to undue discovery problems that occurred months before the requests. Problems that late appointment of counsel or continuance wouldn't have cured. And second, Sigler distorts the abuse of discretion standard. Laced throughout the briefing, it seems as though Hopkins needs to show this court that the district court's decisions weren't just good but great. But it actually requires Sigler to show that the decisions weren't just wrong, but clearly so. This approach fails to follow this court's case law and fails to provide any limiting principle. If adopted, it's difficult to see what record would ever survive Sigler's scrutiny. This court should reject that approach and affirm the district court's decision, denying the appointment of counsel and continuance requests. Commenting on the exchange between counsel and the court just now, there's a bit of a discussion about the likelihood of success on the merits. I think that at that stage, with the record that was in front of the district court judge, it was a push, we now have the full trial transcripts. And further, the idea that the likelihood of success on the merits is only futile, I believe was the word, that's not anywhere in Wilburn. It's a low hurdle, but there is a hurdle there. And further, Mr. Sigler was more than capable of representing himself and did in fact represent himself. As we pointed out in the briefing, it wasn't just the basic of the mechanics of the trial that he covered. He meaningfully participated in other aspects, more advanced aspects of the trial. And unless there's anything further from the panel, I believe I'm going to yield the remainder of my time. Judge Owens, anything? Judge Battaglia? No. All right, we'll hear rebuttal from, in just one moment, from Mr. Jaffe, but before we do, I want to remember, because I forgot at the beginning to acknowledge, I think you're participating pursuant to the pro bono program, is that correct? That's correct. I was remiss in not thanking you for your participation. Thank you. We appreciate it very much. Thank you. And now we'll hear your rebuttal. Great. So I wanted to address a couple points in the couple minutes that I have here. The first is on the likelihood of success factor. The question is, I didn't mean to suggest, and don't think I did suggest, that futility is the standard. But looking at the history of the likelihood of success factor within the test, that was the origin for coming up with that factor. So that was where that term came in, and I think if you look at the history of the case law, going back to the Wygant decision, that's where it comes from. To address counsel's point about whether Mr. Siegler adequately litigated his claim, so there are two issues to address here. Number one is the procedural failures that preceded his request for appointment of counsel, that is directly relevant to his failure to articulate his claim, so the fact that he was unable to do these things leading up to his request for counsel, that is frankly direct evidence that he was unable to sufficiently articulate his claims. And then secondly, looking at his performance at trial, I think it's important to understand that we have to look at the court's order and view of the evidence that was in front of it. The trial all came after the request for appointment of counsel. So I think we have to look at the judge's order and view of the evidence that was before it at the time, rather than going back with hindsight 2020. And then finally, regarding the complexity of the claims that were at issue here, there were two issues that I think are relevant. Number one is, this goes beyond kind of what I think defendants counsel referred to it as a red card, blue card case, there was medical expert testimony that was presented at trial, one of the theories was that any injuries were exacerbations of prior injuries that Mr. Siegler suffered. And therefore, expert testimony was presented at trial, elicited by the defendants, and where we have expert testimony, assistance of counsel would be helpful. And then lastly, the existence of the trial itself raises additional complexities and legal issues that I submit should be considered as well. And I see I'm out of time, but thank you very much. Thank you both. We appreciate your arguments very much and that case will be submitted.
judges: Christen, Owens, Bataillon